# IN THE UNITED STATED DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

LAMONT WILLIAMSON,      )
             )
Plaintiff,         )
             )  Cause No. 4:12-cv-01548-CAS
v.           )
             )
TROY STEELE,       )
             )
  Serve by consent of counsel to:  )
    Thomas Smith     )
    Attorney General of Missouri )  **JURY TRIAL DEMANDED**
             )
    Old Post Office Building  )
    P.O. Box 861      )
    St. Louis, MO 63188   )
             )
GEORGE LOMBARDI,     )
             )
  Serve by consent of counsel to:  )
    Thomas Smith     )
    Attorney General of Missouri )
    Old Post Office Building  )
    P.O. Box 861      )
    St. Louis, MO 63188   )
             )
MISSOURI DEPARTMENT OF CORRECTIONS, )
             )
  Serve by consent of counsel to:  )
    Thomas Smith     )
    Attorney General of Missouri )
    Old Post Office Building  )
    P.O. Box 861      )
    St. Louis, MO 63188   )
             )
CORIZON, INC.       )
             )
  Serve to:        )
    CT Corporation Systems  )
    120 S. Central Avenue   )
    Clayton, MO 63105    )
             )

WILLIAM MCKINNEY                          )
                                          )
      Previously served.                 )
                                          )
Defendants.                               )
                                          )

## FIRST AMENDED COMPLAINT

Comes now Plaintiff, Lamont Williamson, and for his First Amended Complaint states as follows:

## <u>PARTIES</u>

1.      Plaintiff, Lamont Williamson ("Williamson"), is an individual residing at Southeast Correctional Center in Charleston, Missouri. Plaintiff is and was at all times pertinent to this litigation an inmate in the Missouri Department of Corrections ("MDOC") at the Potosi Correctional Center ("PCC") located in Potosi, Missouri.

2.      Defendant Corizon, Inc. ("Corizon") is a Missouri corporation in good standing located in St. Louis County, Missouri. At all times pertinent hereto, Corizon held itself out as a professional health care provider which specialized in providing medical care in correctional facilities, and was under contract to provide medical services to inmates for the MDOC, including Williamson under the color of state law. At all times mentioned herein, Corizon acted individually and by and through its agents and employees including but not limited to Dr. McKinney.

3.      Defendant William McKinney Jr. ("Dr. McKinney") is and was at all times pertinent hereto, licensed to practice medicine in the State of Missouri and is, upon information and belief, a resident of the State of Missouri. Dr. McKinney, at all times relevant to this action, acted individually and as an employee or agent of Corizon under the color of state law.

4.     Defendant Missouri Department of Corrections is a subdivision of the State of Missouri which operates State prisons acting under the color of state law.

5.     Defendant George Lombardi ("Lombardi") is and was at all times pertinent hereto, the Director of the Missouri Department of Corrections ("MDOC") responsible for supervising and implementing uniform policies and procedures and the care and treatment of inmates housed by the MDOC and is, upon information and belief, a resident of the State of Missouri.  Lombardi at all times relevant to this action, acted as the Director of the MDOC and individually and under the color of state law..

6.     Defendant Troy Steele ("Steele") is and was at all times pertinent hereto the warden and chief administrative officer of PCC and is, upon information and belief, a resident of the State of Missouri.  Steele at all times relevant to this action, acted as warden and chief administrative office of PCC and individually and under the color of state law.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 28 U.S.C. § 1343.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.     Venue properly lies in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.  All defendants are either residents of the State of Missouri or otherwise have sufficient contacts with this District to justify them being fairly brought into court in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

9.     Prior to October 25, 2011, Williamson was incarcerated at PCC.

10.    On May 23, 2011, Williamson was in a physical altercation with his cellmate, Issa Emmerson in their cell.  During the altercation, Emmerson threw boiling coffee on Williamson, causing him to sustain severe burns to his face and right ear.

11.    Correctional officers responded to the call and one officer sprayed Williamson in the face with mace.  Williamson and Emmerson were then separated by the officers.  In an attempt to remove himself from a dangerous situation, Williamson walked out of the cell.  However, one of the officers pulled Williamson back into the cell and ordered him to lie face down on the ground, which Williamson did.  Another officer then handcuffed Williamson and further restrained him by kneeling on his back.

12.    Williamson then realized that Emmerson remained in the cell unrestrained.  Despite the obvious risk that Emmerson would attack Williamson while he was restrained and defenseless on the ground, the officers did not immediately restrain Emmerson.  Williamson remained on the floor, handcuffed and restrained for at least a minute.

13.    Finally, one officer handcuffed Emmerson and as he did so, he whispered something to Emmerson, which could not be heard by Williamson.  Ignoring the risk of harm to Williamson, the officer walked Emmerson towards Williamson and released him, giving Emmerson the opportunity to assault Williamson while he was handcuffed on the ground and being restrained by an officer.

14.    Emmerson took two steps and then violently kicked Williamson in his head, causing his nose and mouth to bleed and causing Williamson extreme and obvious pain.

15.    Williamson reported to the PCC medical department and informed the staff of the nature of his injuries.  During an examination by a nurse ("Nurse Jean"), Williamson explained that he was experiencing numbness on his face and had no hearing in his right ear.  Despite his

plainly apparent severe burns and obvious pain, Nurse Jean failed to take appropriate action to evaluate Williamson's medical needs. Instead, she treated Williamson's severe burns with cotton balls and disinfectant. After multiple pleas by Williamson, Nurse Jean finally agreed to examine the interior of his ear. Nurse Jean acknowledged that there was a burn blister inside his ear but refused to treat it. Williamson requested to see a doctor but was refused. Williamson requested to go to a hospital and to see a burn specialist but was refused. Instead, Nurse Jean sent him back to his cell without providing any relief for Williamson's obvious pain and without adequately treating his severe burns.

16.     Upon return to his cell, Williamson washed his face and subsequently, was horrified to see that the skin on the right side of his face had completely washed off. Williamson immediately declared a medical emergency and was escorted back to the medical department.

17.     Upon arrival to the medical department, he informed another nurse ("Nurse Casey") that he had no feeling in his face and had no hearing in his right ear. Nurse Casey contacted Dr. McKinney by telephone. Dr. McKinney instructed Nurse Casey to treat Williamson with skin cream, wrap his wounds and place him in the infirmary until Dr. McKinney could examine him. Dr. McKinney also prescribed a painkiller and Tylenol 3 for Williamson's pain. Williamson again requested to go to a hospital and to see a burn specialist but was again refused. Instead, Williamson remained in the infirmary until the following day. While in the infirmary, another nurse ("Nurse Robin") carelessly and haphazardly dressed the severe burn on Williamson's face.

18.     On May 24, 2011, Williamson was finally evaluated by Dr. McKinney. Dr. McKinney diagnosed Williamson with second and third degree burns on his face and right ear. Williamson pleaded with Dr. McKinney to examine the interior of his right ear and described

that his hearing sounded "like he was under water." Dr. McKinney examined his right ear and apparently lanced a burn blister in the ear, causing Williamson extreme pain. Williamson again requested to go to a hospital and to see a burn specialist but was again refused. Williamson subsequently developed an infection in his right ear which caused him extreme and obvious pain.

19.     On or about the first week in June, 2011, Williamson again reported to the medical department. Williamson expressed to Dr. McKinney that he was in severe pain and that he believed his ear was infected. Dr. McKinney stated that he could not treat Williamson's inner ear. After pleas from Williamson, Dr. McKinney agreed to prescribe an antibiotic to treat the infection. Williamson informed Dr. McKinney and a nurse ("Nurse Tamra") that he was allergic to Penicillin. Thereafter, Dr. McKinney prescribed Amoxicillin to Williamson.

20.     Nurse Tamra furnished the Amoxicillin to Williamson and instructed him to take it after he returned to his cell. Upon returning to his cell and taking the medication, Williamson immediately began experiencing symptoms of an allergic reaction which included itching and red spots on his skin. Moments later, Nurse Tamra appeared and notified Williamson that Amoxicillin is related to Penicillin. She seized the prescribed medication from Williamson and stated that she would return with a different antibiotic for his infection. Williamson did not receive any additional medication for several months.

21.     On or about the end of the first week in June, 2011, Williamson attempted to rinse his right ear with warm soapy water, which was suggested in the patient education form he received from the medical department. This exercise caused Williamson sharp, radiating pain from his ear down through his throat and nose. Williamson immediately declared a medical emergency and reported to the medical department.

22.     Upon his arrival at the medical department, Williamson reported intense pain in his ear.  Despite his obvious pain and plainly apparent suffering, Williamson was again denied any meaningful medical evaluation.  Nurse Casey contacted Dr. McKinney by telephone who again prescribed a pain killer and instructed that Williamson be placed in the infirmary until Dr. McKinney was available to examine him.

23.     When Dr. McKinney examined Williamson, Williamson again expressed intense pain and that he believed he had an infection in his ear.  Williamson again requested to go to a hospital and to see a burn specialist but was again refused.  Dr. McKinney refused to prescribe an antibiotic for Williamson despite his plainly apparent symptoms of infection and pain.  Williamson was dismissed without further evaluation or pain treatment.

24.     From June, 2011 through August, 2011, Williamson experienced severe and obvious pain from the infection in his right ear.  Blood and a thick liquid drained from his ear every night and Williamson could not sleep because of the extreme pain.  During this time, the medical staff failed to take appropriate action to adequately evaluate and treat Williamson's medical needs.

25.     On or about August, 2011, Williamson declared yet another medical emergency as blood continued to drain from his ear.  When he arrived at the medical department, Nurse Casey made a note that his ear infection was "really gross."  Nurse Casey then scheduled a future appointment for Williamson with Dr. McKinney.

26.     When Dr. McKinney examined Williamson, despite Williamsons' obvious infection and extreme pain, he refused to treat Williamson.  Dr. McKinney sent Williamson to his cell without prescribing any medication for his obvious infection and pain.  Later, however,

Dr. McKinney finally prescribed two antibiotics to treat the severe infection in Williamson's ear, approximately two months after the infection developed.

27.     Three days after taking the antibiotic, Williamson was awakened by a nurse. When he stood up, a viscid liquid came out of Williamson's right ear. Williamson immediately requested to be taken off the medication and requested that the nurse properly document his refusal.

28.     The denial of medical treatment and failure to provide pain management medication and antibiotics for Williamsons' ear infection is the direct and proximate cause of Williamsons injury, including but not limited to:

> a.     Loss of hearing in his right ear;
>
> b.     Past, present and future physical, mental and emotional pain and anguish;
>
> c.     The need for future medical care, testing, evaluation and medication;

29.     In addition, the failure of MDOC's correctional officers to properly restrain Emmerson from kicking Williamson in the head was a direct and proximate cause of Williamson's injury, including but not limited to:

> a.     A head injury;
>
> b.     Past, present and future physical, mental and emotional pain and anguish.

**COUNT I
DELIBERATE INDIFFERENCE TO
SERIOUS MEDICAL NEEDS
(Against Corizon, Inc.)**

30.     Plaintiff realleges and incorporates Paragraphs 1 through 29 as if fully set forth herein.

31.     Plaintiff's second and third degree burns on his face and right ear and the subsequent ear infection that developed constitute a serious medical need recognizable by a layperson as necessitating immediate medical attention.

32.     Corizon, through its employees and agents, had actual knowledge that Williamson faced a substantial risk of harm from his severe burns and subsequent ear infection. Corizon also had actual knowledge that Williamson faced a substantial risk of actual harm from continued severe pain.

33.     Corizon, through its employees and agents, consciously refused to take reasonable steps to deal with Williamson's injuries including but not limited to, providing grossly negligent care in that Corizon, through its employees and agents, failed to initially diagnose the burn blister in Williamson's ear; failed to properly monitor Williamson's condition; failed to properly treat Williamson's severe infection; and failed to provide Williamson with appropriate medication for his severe and obvious pain.

34.     The deliberate indifference of Corizon, through its employees and agents, to Plaintiff's serious medical needs constituted a violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

35.     Corizon's deliberate indifference to Plaintiff's serious medical needs proximately caused or contributed to cause the injuries and damages set forth herein.

36.     Plaintiff seeks remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983. Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

**COUNT II**
**MEDICAL NEGLIGENCE**
**(Against Corizon Inc.)**

37.     Plaintiff realleges and incorporates Paragraphs 1 through 36 as though fully set forth herein.

38.     Corizon, acting through its nurses and physician failed to use such care as a reasonably prudent health care provider would use under the same or similar circumstances in observing, diagnosing, monitoring, caring for and treating Williamson and was thereby negligent in that among other things Corizon's employees and agents failed to initially diagnose the burn blister in Williamson's ear; failed to properly monitor Williamson's condition; failed to properly treat Williamson's severe infection; and failed to provide Williamson with appropriate medication for his severe and obvious pain.

39.     Corizon's negligence directly and proximately caused or contributed to cause the injuries and damages set forth herein.

40.     The conduct, acts and omissions of Corizon were grossly negligent and demonstrate a complete indifference to or reckless disregard for the rights, safety and welfare of Plaintiff thereby justifying the imposition of exemplary or punitive damages.

WHEREFORE, Plaintiff seeks damages from Corizon in an amount that is fair and reasonable, punitive damages sufficient to punish and deter Corizon and others from similar conduct in the future, and such other further relief as this Court deems appropriate.

**COUNT III**
**DELIBERATE INDIFFERENCE TO**
**SERIOUS MEDICAL NEEDS**
**(Against Dr. William McKinney)**

41.     Plaintiff realleges and incorporates Paragraphs 1 through 40 as if fully set forth herein.

42.     Plaintiff's second and third degree burns on his face and right ear and the subsequent ear infection that developed constitute a serious medical need recognizable by a layperson as necessitating immediate medical attention.

43.     Dr. McKinney had actual knowledge that Williamson faced a substantial risk of harm from his severe burns and subsequent ear infection.  Dr. McKinney also had actual knowledge that Williamson faced a substantial risk of actual harm from continued severe pain.

44.     Dr. McKinney consciously refused to take reasonable steps to deal with Williamson's injuries including but not limited to, providing grossly negligent care in that Dr. McKinney refused to refer Williamson to a hospital, prescribed medication to Williamson to which he knew Williamson was allergic and thereafter refused to treat Williamson's ear infection with antibiotics for a period of two (2) months.  On many occasions, Dr. McKinney consciously refused to provide reasonable treatment for Plaintiff's severe pain.

45.     Dr. McKinney's deliberate indifference to Plaintiff's serious medical needs constituted a violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

46.     Dr. McKinney's deliberate indifference to Plaintiff's serious medical needs proximately caused or contributed to cause the injuries and damages set forth herein.

47.     Plaintiff seeks remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983.  Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

**COUNT IV**
**MEDICAL NEGLIGENCE**
**(Against William McKinney)**

48.     Plaintiff realleges and incorporates Paragraphs 1 through 47 as though fully set forth herein.

49.     Dr. McKinney failed to use such care as a reasonably prudent health care provider would use under the same or similar circumstances in evaluating, observing, diagnosing and caring for Williamson and was thereby negligent in that, among other things, Dr. McKinney refused to refer Williamson to a hospital, prescribed medication to Williamson to which he knew Williamson was allergic and thereafter refused to treat Williamson's ear infection with antibiotics for a period of two (2) months.  On many occasions, Dr. McKinney consciously refused to provide reasonable treatment for Plaintiff's severe pain.

50.     Dr. McKinney's negligence and carelessness directly and proximately caused or contributed to the injuries and damages set forth herein.

51.     Dr. McKinney was at all times pertinent to this matter acting individually and within the scope and course of his employment or agency with Corizon.

52.     The conduct, acts and omissions of Dr. McKinney were grossly negligent and demonstrated a complete indifference to or reckless disregard for, the rights, safety and welfare of Plaintiff thereby justifying the imposition of exemplary or punitive damages.

WHEREFORE, Plaintiff seeks damages from Dr. McKinney in an amount that is fair and reasonable, punitive damages sufficient to punish and to deter Dr. McKinney and others from similar conduct in the future, and such other and further relief as this Court deems appropriate.

**COUNT V**
**FAILURE TO PROTECT**
**(Against the Missouri Department of Corrections)**

53.     Plaintiff realleges and incorporates Paragraphs 1 through 52 as though fully set forth herein.

54.     On May 23, 2011, MDOC, through its correctional officers, displayed deliberate indifference to Williamson's health and safety in that the correctional officers knowingly placed Williamson in risk of serious harm by allowing him to be violently kicked in the head by Emmerson while Williamson was restrained in handcuffs and an officer was kneeling on his back.

55.     The MDOC, through its correctional officers, had actual knowledge of the serious risk to Williamson's health and safety by the fact that Emmerson and Williamson were in a physical altercation immediately prior to the officers' arrival in the cell, which had resulted in serious harm to Williamson.

56.     The MDOC, through its correctional officers, failed to take reasonable steps to protect Williamson from the risk of serious harm in that the correctional officers failed to handcuff or restrain Emmerson and even after he was finally handcuffed, they failed to remove Emmerson from the proximity of Williamson.  Instead, they knowingly put Emmerson in a position to further assault Williamson.

57.     As a direct result of the deliberate indifference to Plaintiff's health and safety by the MDOC, through its correctional officers, Plaintiff suffered a kick to the head which resulted in pain and injury and serious emotional and mental anguish.

58.     MDOC's deliberate indifference to Plaintiff's health and safety proximately caused or contributed to cause the injuries and damages set forth herein.

59.     Plaintiff seeks remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983.  Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

### COUNT VI
### NEGLIGENCE
**(Against Missouri Department of Corrections)**

60.     Plaintiff realleges and incorporates Paragraphs 1 through 59 as though fully set forth herein.

61.     MDOC, through its correctional officers, failed to use such care as a reasonably prudent department of corrections would use under the same or similar circumstances and were thereby negligent in that among other things, the correctional officers failed to secure Emmerson and failed to protect Williamson from attack while he was restrained face down on the ground.

62.     MDOC's negligence directly and proximately caused or contributed to the injuries and damages set forth herein.

63.     The conduct, acts and omissions of the MDOC, through its correctional officers, was grossly negligent and demonstrated a complete indifference to or reckless disregard for, the rights, safety and welfare of Plaintiff thereby justifying the imposition of exemplary or punitive damages.

WHEREFORE, Plaintiff seeks damages from the Missouri Department of Corrections in an amount that is fair and reasonable, punitive damages sufficient to punish and to deter the Missouri Department of Corrections and others from similar conduct in the future, and such other and further relief as this Court deems appropriate.

## COUNT VIII
## FAILURE TO PROTECT
### (Against George Lombardi and Troy Steele)

64.     Plaintiff realleges and incorporates Paragraphs 1 through 63 as though fully set forth herein.

65.     Lombardi and Steele failed to properly train, supervise, control and/or discipline the MDOC correctional officers and were thereby deliberately indifferent to Williamson's health and safety and tacitly authorized the acts of the correctional officers such that those failures to supervise, control and/or discipline the correctional officers reflected a deliberate or conscious choice by Lombardi and Steele.

66.     As a direct result of Lombardi and Steele's deliberate indifference to Plaintiff's health and safety, Plaintiff suffered a kick to the head which resulted in pain and injury and serious emotional and mental anguish.

67.     Lombardi and Steele's deliberate indifference to Plaintiff's health and safety proximately caused or contributed to cause the injuries and damages set forth herein.

68.     Plaintiff seeks remedies for the injuries and damages caused by such Constitutional violations pursuant to 42 U.S.C. § 1983.  Attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 1988.

## COUNT VIII
## NEGLIGENCE
### (Against George Lombardi)

69.     Plaintiff realleges and incorporates Paragraphs 1 through 68 as though fully set forth herein.

70.     Lombardi failed to use such care as a reasonably prudent Director of the MDOC would use under the same or similar circumstances and was thereby negligent in that among other things he failed to supervise, control and/or discipline the correctional officers and failed to adequately arrange for the necessary health care services of Williamson, as required by Missouri law.

71.     Lombardi's negligence directly and proximately caused or contributed to the injuries and damages set forth herein.

72.     The conduct, acts and omissions of Lombardi were grossly negligent and demonstrated a complete indifference to or reckless disregard for, the rights, safety and welfare of Plaintiff thereby justifying the imposition of exemplary or punitive damages.

WHEREFORE, Plaintiff seeks damages from Lombardi in an amount that is fair and reasonable, punitive damages sufficient to punish and to deter Lombardi and others from similar conduct in the future, and such other and further relief as this Court deems appropriate.

**COUNT IX**
**NEGLIGENCE**
**(Against Troy Steele)**

73.     Plaintiff realleges and incorporates Paragraphs 1 through 72 as though fully set forth herein.

74.     Steele failed to use such care as a reasonably prudent warden and chief administrative officer would use under the same or similar circumstances and was thereby negligent in that among other things he failed to supervise, control and/or discipline the correctional officers and failed to adequately arrange for the necessary health care services of Williamson.

75.    Steele's negligence directly and proximately caused or contributed to the injuries and damages set forth herein.

76.    The conduct, acts and omissions of Steele were grossly negligent and demonstrated a complete indifference to or reckless disregard for, the rights, safety and welfare of Plaintiff thereby justifying the imposition of exemplary or punitive damages.

WHEREFORE, Plaintiff seeks damages from Steele in an amount that is fair and reasonable, punitive damages sufficient to punish and to deter Steele and others from similar conduct in the future, and such other and further relief as this Court deems appropriate.

DEVEREUX MURPHY LLC

Dated:  June 13, 2013


*/s/ Eleanor D. Braun* _____
Eleanor D. Braun #62015MO
101 S. Hanley Road, Suite 400
St. Louis, MO 63105
(314)721-1516
edbraun@devereuxmurphy.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned, hereby certifies that true and correct copies of the foregoing were electronically filed  with the Clerk of Court to be served by operation of the Court's electronic filing system upon the Parties of record this 13th day of June, 2013.

The undersigned further certifies that a true and correct copy of the foregoing was mailed via First Class Mail this 13th day of June, 2013 on the following Party:

Corizon, Inc.
CT Corporation Systems
120 S. Central Avenue
Clayton, MO 63105

*/s/ Eleanor D. Braun*